*439 JUSTICE McKINNON,
dissenting.
¶102 I dissent from the Court’s decision. As explained below, the case the Court decides today is not the case that was presented to us. This class action, as argued by Jacobsen and certified by the District Court, is one for declaratory relief under the Uniform Declaratory Judgments Act (Title 27, chapter 8, MCA). The class remedies are a declaratory judgment, an injunction, punitive damages, and attorney’s fees. The injunction gives class members the option of returning to the position they were in when they initially filed their claims, i.e., before Allstate applied the CCPR to them. This is not a class action to determine liability for damages under the Unfair Trade Practices Act (UTPA; Title 33, chapter 18, MCA). Jacobsen did not frame the class claim pursuant to Rule 23(b)(2) as one that would lead to compensatory damages; to the contrary, he conceded from the outset that some of the putative class members may have suffered no individual harm from Allstate’s use of the CCPR. All he requested was an injunction ‘to prohibit Allstate from using its CCPR program, to reopen improperly settled claims, and for disgorgement of illicit profits from the unlawful program.” The District Court, correspondingly, did not certify any claims or remedies under the UTPA.
¶103 This Court, however, proceeds to repackage this case as a UTPA action. One facet of Allstate’s liability is to be decided in a class trial, after which further liability determinations and assessments of damages are to be made in ensuing individual trials. I disagree with this sua sponte reworking of the case. Aside from being improper appellate practice, the scheme the Court has devised here distorts the rules for certifying a class under Rule 23(b)(2) and infringes class members’ due process rights.
¶104 The ensuing discussion relates primarily to my disagreement with the Court’s remaking of the case and the Court’s approach to Rule 23(b)(2) certification. However, like Justice Baker, I also harbor reservations about whether the threshold requirements of Rule 23(a) have been met. I address those concerns at the end of this Dissent.
I. The District Court’s Construction of the Class Claim and Remedies
¶105 Jacobsen’s Fourth Amended Complaint is far from a model of clarity. In fact, the District Court noted in its class-certification Order that there is “considerable pleading imprecision on [the] face” of the complaint. This Court, likewise, acknowledges that “Jacobsen’s requested relief and alleged bases for damages are not entirely clear.” Opinion, ¶ 40.
¶106 Faced with this pleading imprecision, the District Court *440 liberally “construed” Jacobsen’s Fourth Amended Complaint and his arguments supporting class certification so as to arrive at class claims and remedies that could “minimally” satisfy the criteria of Rule 23. Jacobsen certainly benefitted from the District Court’s efforts in this regard, and it must be noted that, just as he has not contested other aspects of the District Court’s decision (see e.g. Opinion, ¶ 62, ¶ 63 n. 9), Jacobsen also has not cross-appealed from the District Court’s ultimate determination of the class claim and the class remedies.
¶107 The District Court perceived both individual and class claims in the Fourth Amended Complaint. In identifying the class claim, the District Court found as follows:
Separate and apart from the individual claims asserted in this case, the court construes the substantive essence of Plaintiff s asserted class claim to be that, irrespective of individual outcomes, the unrepresented segment adjustment practices specified in Allstate’s CCPR Implementation Manual (Tort States) (hereinafter Casualty CCPR) constitute a common pattern and practice in violation of §§33-18-201(1) and (6), MCA, as generally applied to the class as a whole, thereby resulting in indivisible harm to the class as a whole by operation of Allstate’s own zero-sum economic theory and the resulting inversely proportional relationship between Allstate’s profit increases and corresponding decreases in the total amount of compensation paid to the class of unrepresented claimants as a whole.
A critical term in this construction of the class claim is Indivisible harm to the class as a whole.” This language is important because, as explained below, it reflects the limited claim and remedies that the District Court had in mind, and because this Court’s revision of the District Court’s language dramatically alters the nature of this case. ¶108 Jacobsen requested class certification pursuant to Rule 23(b)(2). “‘The key to the [Rule 231(b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted-fhe notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.’ ’’ Diaz v. Blue Cross & Blue Shield of Mont., 2011 MT 322, ¶ 42, 363 Mont. 151, 267 P.3d 756 (brackets in original) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. _, 131 S. Ct. 2541, 2557 (2011)). As the Supreme Court further explained:
In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different *441 injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.
Wal-Mart, 131 S. Ct. at 2557 (emphasis in original).
¶109 The District Court construed Jacobsen’s substantive arguments mindful of these principles, correctly recognizing that Rule 23(b)(2) requires an indivisible remedy and does not permit class certification for purposes of individualized awards of monetary damages. The court construed Jacobsen’s requested class relief under Rule 23(b)(2) to consist of “a claim for class-wide declaratory, injunctive, and incidental monetary relief (equitable disgorgement and punitive damages).”The District Court declined to certify the equitable disgorgement remedy on the ground that it was cumulative to the injunctive relief, but the court otherwise certified the class relief Jacobsen sought. Specifically, the District Court certified the following claim and remedies:
(2) Class Action Claim. The certified class claim is that:
(A) the Casualty CCPR’s unrepresented segment adjusting practices are a common pattern and practice in violation of §§33-18-201(1) and (6), MCA, as generally applied to the class of unrepresented claimants as a whole;
(B) Allstate’s common, systematic use of this pattern and practice in Montana caused indivisible harm to the class as a whole by operation of its zero-sum economic theory and the resulting inversely proportional relationship between Allstate profit increases and corresponding decreases in the total amount of compensation paid to the class of unrepresented claimants as a whole; and
(C) Allstate acted with “actual malice,” as defined by §27-1-221(2), MCA, by intentionally, deliberately, and consciously creating and disregarding a high probability that the net effect of its Casualty CCPR’s unrepresented segment practices would result in net settlement payouts to the class as a whole less than the net amount previously sufficient to fully and fair[ly] settle unrepresented claims under Montana law;
(3) Class Action Remedies. The certified class remedies available as a matter of law on proof of the certified class claim are:
(A) declaratory judgment adjudicating the constituent assertions of the certified class claim;
(B) mandatory injunction requiring Allstate to:
*442 (1) give all class members court-approved notice of the right and opportunity to obtain re-opening and re-adjustment of their individual claims by timely returning a proof of claim form; and
(2) re-open and re-adjust each individual claim upon receipt of a timely filed proof of claim;
(C) class-wide punitive damages pursuant to §§ 27-1-220 and 27-1-221(2), MCA (actual malice), predicated on the above-referenced class-wide conduct; and
(D) common fund recovery of class action attorney fees and costs upon a class-wide punitive damages award[.]
¶110 With respect to establishing the “indivisible harm” asserted in the Class Action Claim, the District Court explained that
the occurrence and extent of the actual harm common to the class as a whole is ascertainable and at least generally measurable on an indivisible class-wide basis without consideration of individual outcomes by comparative analysis of relevant industry performance data and internal Allstate performance data.
Jacobsen’s theory is that if Allstate outperformed industry norms (in terms of profits and reduced payouts) due to the CCPR, then the class members were indivisibly harmed.[1]
¶111 Accordingly, setting aside the punitive damages and the common fund recovery,[2] the District Court certified only two class remedies. The first remedy is a declaration that the CCPR constitutes a per se prohibited claim settlement practice under §33-18-201(1) and (6), MCA.[3] The class trial must determine, therefore, that applying the CCPR was unlawful as to all class members or, conversely, to no class *443 members. In a sense, this is analogous to deciding a facial challenge to a statute: to prevail on such a challenge, the plaintiff must show that “no set of circumstances exists under which the [statute] would be valid, i.e., that the law is unconstitutional in all of its applications.” Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449, 128 S. Ct. 1184, 1190 (2008) (internal quotation marks omitted); see also Caldwell v. MACo Workers’ Comp. Trust, 2011 MT 162, ¶ 69, 361 Mont. 140, 256 P.3d 923 (Baker & Rice, JJ., dissenting). That is, in essence, what the certified class claim asserts regarding the CCPR: that no set of circumstances exists under which the CCPR would be valid. The CCPR is unlawful in all of its applications-as the theory goes-because the “attorney economics script” misrepresents facts and because the ‘fast track” system and the ‘9-step process” are inherently incompatible with good-faith effectuation of fair and equitable settlements. If the class prevails on this claim, then the second remedy the District Court certified is an injunction requiring Allstate to allow each class member to return to square one, i.e., go back to the point when his or her claim was first filed, before Allstate applied the CCPR.
¶112 Importantly, the District Court did not certify any class claim or remedies under the UTPA itself. The UTPA recognizes “an independent cause of action [by an insured or a third-party claimant] against an insurer for actual damages caused by the insurer’s violation of subsection (1), (4), (5), (6), (9), or (13) of 33-18-201.” Section 33-18-242(1), MCA. In such action, ‘the court or jury may award such damages as were proximately caused by the violation of subsection (1), (4), (5), (6), (9), or (13) of33-18-201,” as well as “[e]xemplary damages.” Section 33-18-242(4), MCA. That is not the nature of the class action certified by the District Court here. The parties’ arguments in the District Court, and the District Court’s ensuing analysis in its Order, confirm this conclusion. They also provide insight into the precise nature of the class claim, as follows.
¶113 First, in his briefs supporting class certification, Jacobsen asserted that this case is “squarely governed” by Ferguson v. Safeco Ins. Co. of Am., 2008 MT 109, 342 Mont. 380, 180 P.3d 1164. Of relevance, he quoted the following passage from that decision:
The challenge here is not to an error in Safeco’s application of the “made-whole” rule to any given insured. Rather, this case challenges the procedures of a program of subrogation which systematically deprives all class members of any consideration of their “made-whole” rights. Thus, as Ferguson points out in her brief on appeal, her class claims do not seek a determination of entitlements for each class member and the payment of damages; *444 rather, her class claims seek a declaratory ruling that will be enforced to compel Safeco to follow the legal standard in its subrogation program.
Ferguson, ¶ 34. Jacobsen indicated that he was seeking the same sort of relief: a declaratory ruling that will be enforced to compel Allstate to stop using the CCPR. He further asserted that the “vehicle for class relief’ under his Rule 23(b)(2) theory is an injunction requiring Allstate either to re-open and re-adjust the claims, or to disgorge the profits it made as a result of the CCPR. (As noted, the District Court chose the former.) Jacobsen did not assert any entitlement to compensatory damages for class members.
¶114 Second, in its brief seeking dismissal of the class claim, Allstate argued that Jacobsen had compromised the interests of class members by not seeking compensatory damages on their behalf. In response, Jacobsen argued that he was not required to assert claims for compensatory damages. He cited Lebrilla v. Farmers Group, Inc., 16 Cal.Rptr. 3d 25 (Cal. App. 4th Dist. 2004), for the proposition that there is no rule requiring a class representative to seek certification of all causes of action available to every member of the class. See Lebrilla, 16 Cal. Rptr. 3d at 40 (‘Farmers is essentially asking us to hold a class cannot be certified anytime the class representative fails to seek certification of fewer than all causes of action. Of course there is currently no such rule.”).
¶ 115 Third, in its Order, the District Court recognized that there are “case-specific issues peculiar to individual claims” here. The court noted, for example, that whether liability for a given claim had become “reasonably clear,” see §33-18-201(6), MCA, is “a highly individualized, case-specific criterion].”[4] The court noted the same thing with regard to ‘Whether and to what extent individual class members ultimately received fair settlements.” The existence of such factual variations among claimants subjected to the CCPR would preclude classwide adjudication of Allstate’s liability for damages under §33-18-242(1), MCA. But the District Court did not construe this case as such an action. The court instead construed Jacobsen’s class claim to be that Allstate’s use of the CCPR violated § 33-18-201(1) and (6), MCA, ‘irrespective of outcomes in individual cases.” The court observed that “the class-wide matter at issue is the indivisible net effect of the *445 Casualty CCPR unrepresented segment practices on the class as a whole, irrespective of individual outcomes.” Accordingly, setting aside the statute’s case-specific criteria, the District Court reasoned that “§33-18-201(1) and (6), MCA, essentially require Allstate to promptly, accurately, truthfully, fairly, and in good faith adjust bodily injury and property damage claims.” The court construed the class claim to be that Allstate’s use of the CCPR violates these general principles of §33-18-201(1) and (6), MCA.
¶116 Fourth, the District Court recognized that Rule 23(b)(2) does not authorize class certification when each class member would be entitled to an individualized award of monetary damages. The court thus framed “the dispositive Rule 23(b)(2) issues” as “(1) whether the asserted class claim seeks permissible forms of injunctive relief that will benefit the class as a whole and (2) whether as a matter of law the requested forms of monetary relief, however characterized, are permissible forms of Rule 23(b)(2) relief incidental to the predicate declaratory and injunctive relief from which they flow.” I discuss the meaning of ‘incidental” monetary relief below. See ¶ 134, infra. For present purposes, it suffices to note that it does not include individual claims for compensatory damages. The District Court expressly rejected Allstate’s contention that the class action here would “serve only to facilitate the award of damages.”
¶117 Finally, consistent with the foregoing points, the District Court cited Title 27, chapter 8, MCA (the Uniform Declaratory Judgments Act), as authority for the first certified class remedy and Title 27, chapter 19, MCA (authorizing injunctions), as authority for the second certified class remedy. The court did not rely on §33-18-242, MCA, as authority for the class claim or the class remedy. In fact, the District Court rejected the proposition that Jacobsen’s class action is one that seeks “damages” under the UTPA:
Here, as construed by the court, Plaintiffs asserted UTPA-based class claim neither constitutes nor is tantamount to a claim for compensatory damagesJt merely encompasses first and third-party ... claims for declaratory relief and related equitable and punitive relief predicated on asserted class-wide violations of §33-18-201(1) and (6), MCA.
Allstate had pointed out in its brief opposing class certification that §33-18-242, MCA, specifically authorizes damages-eompensatory and punitive-for an insurer’s violation of the UTPA, not the equitable remedies that Jacobsen sought. See § 33-18-242(4), MCA. Allstate argued, therefore, that injunctive relief was not available to remedy the asserted classwide violations of §33-18-201(1) and (6), MCA. The *446 District Court, however, interpreted our decision in Ferguson as approving a class action “distinct from an independent UTPA claim for damages under §33-18-242(1) and (3), MCA.” The court concluded that this case was such an action, i.e., “a UTPA-based Rule 23(b)(2) class action claim for declaratory and derivative non-compensatory injunctive relief.”
¶118 In sum, the District Court attempted to construe Jacobsen’s filings to assert a class claim and class remedies that “minimally” satisfy the criteria of Rule 23(b)(2). The court recognized that Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class, and that Rule 23(b)(2) does not authorize class certification when each class member would be entitled to an individualized award of monetary damages. Diaz, ¶ 42; Wal-Mart, 131 S. Ct. at 2557. Construing Jacobsen’s filings, the District Court found that his “asserted UTPAbased class claim neither constitutes nor is tantamount to a claim for compensatory damages”; rather, what Jacobsen was asserting was “a UTPA-based Rule 23(b)(2) class action claim for declaratory and derivative non-compensatory injunctive relief.” The District Court observed that this claim is “distinct from an independent UTPA claim for damages under §33-18-242(1) and (3), MCA.”
¶119 The class claim asserts what is in essence a facial challenge to the CCPR, alleging that the CCPR is per se unlawful as to all unrepresented claimants and that Allstate’s use of the CCPR caused ‘indivisible harm to the class as a whole” as shown “by comparative analysis of relevant industry performance data and internal Allstate performance data.” Jacobsen explained in the District Court that the claim “challenges Allstate’s systematic attempt to settle claims below fair value.” In his view, “Allstate systematically promoted bad-faith adjusting and sought to undervalue claims.” Whether class members’ claims were, in fact, undervalued or settled unfairly is not the issue; the challenge is to Allstate’s alleged “systematic attempt” to settle claims below fair value. As Jacobsen further explains this theory in his brief on appeal, Allstate used “settlement guidelines below the level needed to fairly compensate claimants” which caused class members “indivisible legal injury”; i.e., ‘Ta]ll members suffered legal injury through the use of a dishonest system, whether or not the monetary value of each settlement ultimately was unfair.”
¶120 Jacobsen and the District Court employ §33-18-201(1) and (6), MCA, as the legal standard for judging the CCPR’s validity, but without consideration of the case-specific criteria contained in the statute (such as whether liability in a particular class member’s claim *447 was “reasonably clear”). Under this approach, the issues to be determined at the class trial are: whether the “attorney economics script”misrepresents facts; whether the ‘fast track”system and the “9-step process” are inherently incompatible with good-faith effectuation of prompt, fair, and equitable settlements; and whether use of these programs caused indivisible harm to the class as a whole. If using the CCPR enabled Allstate to outperform the industry, and if the CCPR is facially unlawful, then class members suffered an indivisible legal injury. The proper remedy for this injury, the District Court determined, is injunctive relief “restoring interested class members and Allstate to the pre-settlement status quo.” This is the class action that the District Court certified and that Allstate appealed to this Court.
II. This Court’s Remaking of the Class Claim and Remedies
¶121 The Court, on its own initiative, fundamentally revises this framework. The Court begins with the erroneous premise that the District Court formulated the class claim using the ‘indivisible harm to the class as a whole” language “so as to justify the entry of a class-wide punitive damages award.” Opinion, ¶ 47. That is simply incorrect. The District Court used this language because indivisibility is what is needed to certify a class under Rule 23(b)(2), Diaz, ¶ 42; Wal-Mart, 131 S. Ct. at 2557, and because that is what Jacobsen had asserted in his pleadings and arguments.
¶122 Nevertheless, based on its mistaken assumption about the District Court’s intent, the Court proceeds to revise the class claim as follows (underlining added):
As originally certified: “(B) Allstate’s common, systematic use of this pattern and practice in Montana caused indivisible harm to the class as a whole by operation of its zero-sum economic theory and the resulting inversely proportional relationship between Allstate profit increases and corresponding decreases in the total amount of compensation paid to the class of unrepresented claimants as a whole.”
As revised by the Court: ‘(B) Allstate’s common, systematic use of this pattern and practice in Montana resulted in damages to the members of the class by operation of its zero-sum economic theory and the resulting inversely proportional relationship between Allstate profit increases and corresponding decreases in the total amount of compensation paid to the class of unrepresented claimants as a whole.” Opinion, ¶ 47.
The Court then, on its own initiative, augments the relief available to the class members. In addition to the declaratory and injunctive *448 remedies certified by the District Court, the Court announces that the class trial will “set the stage” for “individual monetary relief’ in “later individual trials.” Opinion, ¶¶ 43, 46, 49, 90. The Court explains that the class trial will determine Allstate’s liability for a UTPA violation, and the later individual trials will determine class members’ “compensatory damages.” Opinion, ¶¶ 49, 57, 66, 90. The Court also announces that class members may seek relief for both “economic” and “emotional” injury, Opinion, ¶ 55-something that Jacobsen never asserted, and that the District Court never certified, in the Rule 23(b)(2) class claim and remedies.
¶123 This gratuitous reworking of the case is in direct contradiction to the District Court’s certification of this case as a class action “distinct from an independent UTPA claim for damages under §§33-18-242(1) and (3), MCA.”It also contradicts the District Court’s statement that, “as construed by the court, Plaintiffs asserted UTPAbased class claim neither constitutes nor is tantamount to a claim for compensatory damages.” In fact, the only monetary relief that Jacobsen discussed in his argument supporting class certification was “disgorgement of illicit profits from the unlawful [CCPR] program.” Acknowledging the limitations of Rule 23(b)(2) certification, Jacobsen did not propose that the class action would result in monetary damages under § 33-18-242, MCA. His theory, rather, was unjust enrichment-that Allstate had unjustly enriched itself at the expense of class members by using patently unlawful claim settlement practices, as evidenced by Allstate’s ability to outperform the industry. The District Court accepted this theory, but found that an injunction allowing class members to return to square one, rather than an injunction requiring Allstate to “disgorge illicit profits,” would be the proper remedy. The Court thus errs in reframing Jacobsen’s class claim as a springboard for future individual trials on damages. The class claim, as construed and certified by the District Court, does not determine whether Allstate is liable for actual damages under the UTPA. The District Court did not certify a class action under §33-18-242, MCA; it certified a class action under Title 27, chapters 8 and 19, MCA.
¶124 “[Alppellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.” NASA v. Nelson, 562 U.S._, 131 S. Ct. 746, 756 n. 10 (2011) (internal quotation marks omitted). The Court’s choice to remake this class action disregards this fundamental premise of our adversarial system. The Court’s citation to §3-2-204(1), MCA-see Opinion, ¶ 47-is clearly misplaced. That *449 provision simply grants this Court authority to “affirm, reverse, or modify any judgment or order appealed from.” Section 3-2-204(1), MCA. It does not give this Court authority to fundamentally remake the case to state claims and remedies that the appellee neither asserted in the district court nor raised in a cross-appeal before this Court. Ironically, the Court uses the arguments of the appellant (Allstate) opposing class certification as justification to revise the class claim and remedies in a way that exposes the appellant to significantly greater liability.
III. Flaws in the Court’s Remade Class Claim and Remedies
¶125 Besides the questionable procedural aspect of the Court’s action, the remade class claim and class remedies are flawed for additional reasons.
¶126 First, as an initial matter, the Court’s Opinion is internally inconsistent. Pursuant to the District Court’s Order, the class is seeking a declaratory judgment as to three issues: (A) that the CCPR violates § 33-18-201(1) and (6), MCA, as applied to the class of unrepresented claimants as a whole; (B) that Allstate’s systematic use of the CCPR “caused indivisible harm to the class as a whole”; and (C) that Allstate acted with actual malice. See ¶ 109, supra. Now, under the Court’s rewording of issue (B), the class is seeking a declaratory judgment that Allstate’s systematic use of the CCPR “resulted in damages to the members of the class.” Opinion, ¶ 47. At the same time, however, the Court states repeatedly that whether class members suffered damages is to be determined in later individual trials. See Opinion, ¶ 46 (‘Damages claims may be determined in later individual trials after [the] class trial....”), ¶ 57 (the specifics of a class member’s injuries will ‘be aired in a later, individual suit for damages”), ¶ 66 (‘The later individual trials would allow Allstate to present evidence that individual class members suffered no injury.’), ¶ 78 (“Here, adjudicating the requested injunctive and declaratory relief would not involve a ... determination of compensatory damages.’), ¶ 90 (“the class members would be entitled to only the compensatory damages they can prove in the individual cases’). Our Opinion leaves the District Court and the parties guessing as to how the fact-finder in the class trial is to determine whether Allstate’s use of the CCPR “resulted in damages to the members of the class” when, under this Court’s decision, damages to the members of the class are to be determined in “later individual trials” at which Allstate may “present evidence that individual class members suffered no injury.” The Court offers no explanation for this incongruity-an incongruity *450 that arose out of the Court’s decision to insert “damages” into the class claim.
¶127 Second, the question whether Allstate’s use of the CCPR “resulted in damages to the members of the class” cannot be answered on a classwide basis in any event. A claimant is not damaged under §33-18-201(6), MCA, unless the insurer’s liability for the claim was "reasonably clear.” A claimant is not damaged under §33-18-201(1), MCA, unless the misrepresented facts were “pertinent” to coverages “at issue.” A claimant is not entitled to damages under the UTPA unless the alleged damages were “proximately caused” by the UTPA violation. Section 33-18-242(4), MCA. A claimant is not entitled to damages under the UTPA ‘if the insurer had a reasonable basis in law or in fact for contesting the claim or the amount of the claim.” Section 33-18-242(5), MCA. These are all highly individualized, case-specific criteria.
¶128 Third, under the legal authority discussed above and in Justice Baker’s Dissent, class certification under Rule 23(b)(2) is improper where the requested injunctive or declaratory relief would simply serve as a basis for eventually providing monetary relief. Dissent, ¶¶ 97-99; Wal-Mart, 131 S. Ct. at 2557 (‘[Rule 23(b)(2)] does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.’). I agree with Justice Baker’s analysis and conclusion that the Rule 23(b)(2) class trial which the Court conceives in today’s Opinion is for the purpose of laying a foundation for individualized awards of monetary damages. Dissent, ¶ 99. This approach is wholly inconsistent with Rule 23(b)(2)’s history and purpose.[5] As the Supreme Court explained:
*451 Because Rule 23 “stems from equity practice” that predated its codification, Amchem Products, Inc. v. Windsor, 521 U.S. 591, 613 (1997), in determining its meaning we have previously looked to the historical models on which the Rule was based, Ortiz v. Fibreboard Corp., 527 U.S. 815, 841-845 (1999). As we observed in Amchem, Tcjivil rights cases against parties charged with unlawful, class-based discrimination are prime examples” of what (b)(2) is meant to capture. 521 U.S., at 614. In particular, the Rule reflects a series of decisions involving challenges to racial segregation-conduct that was remedied by a single classwide order. In none of the cases cited by the Advisory Committee as examples of (b)(2)’s antecedents did the plaintiffs combine any claim for individualized relief with their classwide injunction.
Wal-Mart, 131 S. Ct. at 2557-58 (brackets in original).
¶129 Fourth, using class certification under Rule 23(b)(2) to “set the stage” for later individual trials on compensatory damages, Opinion, ¶¶ 46, 49, 90, presents due process problems. Classes certified under Rule 23(b)(1) and (b)(2) are “mandatory classes: The Rule provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action.” Wal-Mart, 131 S. Ct. at 2558; see also M. R. Civ. P. 23(c)(2). Rule 23(b)(3), on the other hand,
allows class certification in a much wider set of circumstances but with greater procedural protections. Its only prerequisites are that “the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.” Rule 23(b)(3). And unlike (b)(1) and (b)(2) classes, the (b)(3) class is not mandatory; class members are entitled to receive “the best notice that is practicable under the circumstances” and to withdraw from the class at their option. See Rule 23(c)(2)(B).
Wal-Mart, 131 S. Ct. at 2558; see also M. R. Civ. P. 23(b)(3), (c)(2)(B).
*452 ¶130 The absence of such procedural protections in a class action predominantly for monetary damages violates due process. Ellis v. Costco Wholesale Corp., 657 F.3d 970, 987 (9th Cir. 2011) (citing Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985)).[6] According to the Supreme Court,
[t]he procedural protections attending the (b)(3) class-predominance, superiority, mandatory notice, and the right to opt out-are missing from (b)(2) not because the Rule considers them unnecessary, but because it considers them unnecessary to a (b)(2) class. When a class seeks an indivisible injunction benefitting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating the dispute. Predominance and superiority are self-evident. But with respect to each class member’s individualized claim for money, that is not so-which is precisely why (b)(3) requires the judge to make findings about predominance and superiority before allowing the class. Similarly, (b)(2) does not require that class members be given notice and opt-out rights, presumably because it is thought (rightly or wrongly) that notice has no purpose when the class is mandatory, and that depriving people of their right to sue in this manner complies with the Due Process Clause. In the context of a class action predominantly for money damages we have held that absence of notice and opt-out violates due process. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985). While we have never held that to be so where the monetary claims do not predominate, the serious possibility that it may be so provides an additional reason not to read Rule 23(b)(2) to include the monetary claims here.
Wal-Mart, 131 S. Ct. at 2558-59 (emphasis in original).
¶131 That is precisely the problem the Court has created by transforming this case into a class action under § 33-18-242, MCA. Apparently, Allstate’s liability to class members under §33-18-242(1), MCA, will be determined in a class trial, which will “set the stage” for *453 later individual trials on damages under § 33-18-242(4), MCA. Opinion, ¶¶ 49, 90. Because this class action is certified under Rule 23(b)(2), the class is mandatory and the predominance, superiority, notice, and opt-out protections of Rule 23(b)(3) do not apply. If Jacobsen loses on the merits, then the class members’ individual claims for damages will be seriously compromised, if not totally barred. See Randall v. Rolls-Royce Corp., 637 F.3d 818, 820 (7th Cir. 2011). This approach of “depriving people of their right to sue” by approving a mandatory class absent notice and opt-out rights violates the Due Process Clause. Wal-Mart, 131 S. Ct. at 2559.
¶132 The fact that the class trial may also result in injunctive relief (in addition to the compensatory damages the Court envisions in later individualized trials), Opinion, ¶ 90, does not alter this conclusion. Even if injunctive relief is the “predominant” remedy,
[t]he mere predominance” of a proper (b)(2) injunctive claim does nothing to justify elimination of Rule 23(b)(3)’s procedural protections: It neither establishes the superiority of class adjudication over individual adjudication nor cures the notice and opt-out problems. We fail to see why the Rule should be read to nullify these protections whenever a plaintiff class, at its option, combines its monetary claims with a request-even a predominating request”-for an injunction.
Wal-Mart, 131 S. Ct. at 2559 (emphases in original); see also Ellis, 657 F.3d at 986-87.
¶133 For all of the foregoing reasons, the Court errs in remaking this class action into one that determines liability for damages under §33-18-242, MCA. Before concluding this discussion, it is necessary to address McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 672 F.3d 482 (7th Cir. 2012), upon which the Court relies heavily. See Opinion, ¶¶ 41,42,43,45,46,57, 66. The plaintiffs in that case sought certification, under Rule 23(b)(2), to determine whether Merrill Lynch was engaged in practices that had a disparate impact on members of the class in violation of federal antidiscrimination law, and to provide corresponding injunctive relief. McReynolds, 672 F.3d at 483. The plaintiffs also sought certification, under Rule 23(b)(3), for compensatory and punitive damages; however, such certification was not at issue on appeal. McReynolds, 672 F.3d at 483. The issues were whether the plaintiffs could obtain interlocutory review of the district court’s certification decision and whether, under Wal-Mart, Merrill Lynch’s delegation of decision-making authority to local managers precluded certification of a classwide claim for injunctive relief. McReynolds, 672 F.3d at 484-91. The Court of Appeals (speaking *454 through Judge Posner) noted that “the only issue of relief at present is whether to allow the plaintiffs to seek class-wide injunctive relief’ under Rule 23(b)(2). McReynolds, 672 F.3d at 491. He concluded that certification for this purpose was appropriate. McReynolds, 672 F.3d at 491-92. Then, near the end of the opinion, Judge Posner opined that if the classwide issue were ultimately resolved in the plaintiffs’ favor (i.e., with a finding that Merrill Lynch’s policies cause racial discrimination and are not justified by business necessity), then there could be hundreds of separate suits for back pay. McReynolds, 672 F.3d at 492. He did not hold, however, as the Court implies, that Rule 23(b)(2) may be used as an integral component of a larger damages action. Indeed, such a holding would have been inconsistent with Seventh Circuit precedent.
¶134 In Randall, the Court of Appeals (again speaking through Judge Posner) rejected the plaintiffs’ attempt to cloak a damages action in a Rule 23(b)(2) certification. Judge Posner observed that Tcjlass action lawyers like to sue under [Rule 23(b)(2)] because it is less demanding, in a variety of ways, than Rule 23(b)(3) suits, which usually are the only available alternative. Of particular significance, plaintiffs may attempt to shoehorn damages actions into the Rule 23(b)(2) framework, depriving class members of notice and opt-out protections.” Randall, 637 F.3d at 825 (citations and internal quotation marks omitted). Judge Posner noted that it may be permissible in a Rule 23(b)(2) action to grant monetary relief that is incidental to the injunctive or declaratory relief, but he cautioned that “incidental”here means “requiring only a mechanical computation,” Randall, 637 F.3d at 825; in other words, ‘the calculation of monetary relief will be mechanical, formulaic, a task not for a trier of fact but for a computer program,” Johnson v. Meriter Health Servs. Employee Ret. Plan, 702 F.3d 364, 372 (7th Cir. 2012).[7] See also Lemon v. Intl. Union, 216 F.3d 577, 581 (7th Cir. 2000) (incidental damages do not depend in any significant way on the intangible, subjective differences of each class member’s circumstances and do not require additional hearings to resolve the disparate merits of each individual’s case). Judge Posner explained in Randall that the plaintiffs’ monetary claims for back pay were not ‘incidental” under this definition because
*455 calculating the amount of back pay to which the members of the class would be entitled if the plaintiffs prevailed would require 500 separate hearings. The monetary tail would be wagging the injunction dog. An injunction thus “would not provide ‘final’ relief as required by Rule 23(b)(2). An injunction is not a final remedy if it would merely lay an evidentiary foundation for subsequent determinations of liability.”
637 F.3d at 826 (quoting Kartman v. State Farm Mut. Auto. Ins. Co., 634 F.3d 883, 893 (7th Cir. 2011)).
¶135 Kartman likewise undercuts this Court’s reliance on McReynolds. In the remade class action devised by the Court, the class trial is to determine whether Allstate violated the UTPA, and if a violation is found, then “compensatory damages” for “economic” and “emotional” injuries and “underpayment” of benefits is to be adjudicated in later individual trials. Opinion, ¶¶ 49, 55, 68,90. In the later individual trials, Allstate may present evidence that individual class members suffered no injury. Opinion, ¶ 66. Thus, it may turn out that Allstate is liable in damages to some class members and not others. Under this scheme, “[Allstate’s] liability cannot be determined on a class-wide basis, but instead requires individualized factual inquiries into the merits of each [class member’s] claim.” Kartman, 634 F.3d at 893. That is not a proper use of Rule 23(b)(2). Reviewing a similar scheme, the Kartman court observed:
The [district court] judge said he would use the Rule 23(b)(2) proceeding to assess State Farm’s liability” on the damages claims. Perhaps by this the judge meant that he intended to use the Rule 23(b)(2) class proceeding to adjudicate only those common issues pertaining to State Farm’s liability for breach of contract and bad faith, while reserving the more claimant-specific issues-such as the calculation of damages-for subsequent individual adjudication. However, as we have explained, Rule 23(b)(2) governs class claims for final injunctive or declaratory relief and is not appropriately invoked for adjudicating common issues in an action for damages. A damages class may be certified under Rule 23(b)(3) and particular issues identified for resolution on a class-wide basis pursuant to Rule 23(c)(4). Or, in an appropriate case, a Rule 23(b)(2) class and a Rule 23(b)(3) class may be certified where there is a real basis for both damages and an equitable remedy. As we have explained, that is not the case here; neither Rule 23(b)(3) nor Rule 23(c)(4) is implicated.
Kartman, 634 F.3d at 895 (emphases in original, citations omitted); see also e.g. Jamie S. v. Milwaukee Pub. Schs., 668 F.3d 481, 499 (7th Cir. *456 2012) (“a claim for class-wide injunctive and declaratory relief does not satisfy Rule 23(b)(2) if as a substantive matter the relief sought would merely initiate a process through which highly individualized determinations of liability and remedy are made”). McReynolds did not overrule these precedents, and this Court misreads the McReynolds opinion in suggesting otherwise.
¶136 For the reasons noted by the Court and Justice Baker, Rule 23(b)(3) is unavailable to Jacobsen as a basis for certifying a class action. Opinion, ¶ 62; Dissent, ¶ 100. His class claim is valid, if at all, under Rule 23(b)(2) only. In this regard, setting aside my concerns about commonality, typicality, and adequacy (discussed below), the District Court construed Jacobsen’s filings to assert a plausible Rule 23(b)(2) class action-one that determines whether the program at issue (the CCPR) is per se invalid as to all class members, and that provides a single injunction allowing all class members (in the event the CCPR is found unlawful) to have their claims re-opened and re-adjusted. Jacobsen’s class claim, the District Court found, is “a UTPA-based Rule 23(b)(2) class action claim for declaratory and derivative non-compensatory injunctive relief’; it “neither constitutes nor is tantamount to a claim for compensatory damages.” Seventh Circuit precedent, including McReynolds, does not support our converting this Rule 23(b)(2) action for narrow injunctive relief into a broad Rule 23(b)(3) action for compensatory damages-particularly without the procedural protections that attend a Rule 23(b)(3) certification. If anything, the cases cited above repudiate this approach.
¶137 In sum, the Court’s remade class claim and class remedies are, in my view: contrary to the District Court’s construction of Jacobsen’s claim; internally inconsistent; incapable of being determined on a classwide basis; not proper for certification under Rule 23(b)(2); and violative of class members’ due process rights. For all of these reasons, I cannot join the Court’s Opinion.
IV. Rule 23(a) Requirements
¶138 As a final matter, I briefly discuss my concerns relating to the requirements of Rule 23(a).
¶139 First, I believe the Court should definitively state what standard is to be applied when assessing commonality under Rule 23(a)(2). Opinion, ¶¶ 33, 50 (declining to resolve this question). The Court, and Justice Baker in her Dissent, acknowledge confusion in our caselaw regarding this issue. Despite “this Court’s long history of relying on federal jurisprudence when interpreting the class certification requirements of Rule 23,” Chipman v. N.W. Healthcare Corp., 2012 MT 242, ¶ 52, 366 Mont. 450, 288 P.3d 193, we stated in *457 Mattson v. Mont. Power Co. (Mattson III), 2012 MT 318, ¶ 37, 368 Mont. 1, 291 P.3d 1209, that “[t]he question arises as to whether Montana... should abandon its ‘permissive’ approach to Rule 23(a)(2)’s commonality requirement in favor of the Wal-Mart majority’s more stringent standard.” We have not yet answered that question. We have avoided the issue here, as we did in Mattson III, by indicating that the more stringent Wal-Mart standard was satisfied in any event. Opinion, ¶¶ 33, 50; Mattson III, ¶ 37. Yet, evaluating the propriety of the District Court’s decision pursuant to Wal-Mart, and conducting our own exhaustive analysis under the Wal-Mart standard, without definitively setting forth our standard of review, emphasizes the need for us to provide direction in this area of law. Without guidance, this issue will likely be raised repeatedly in the district courts. And, absent our directive to the contrary, it is likely that district courts will continue to assess commonality under the more stringent Wal-Mart standard, as fewer issues are left to be raised on appeal. The District Court here analyzed the facts and law pursuant to Wal-Mart. The Court today has similarly conducted its analysis pursuant to WalMart. The question still remains, however, as to whether the Wal-Mart standard is the controlling standard in Montana. While I understand the necessity for robust adversarial argument and briefing, as well as an appropriate factual scenario, I think litigants and the trial courts need a definitive statement from this Court as to what standard is to be used. I believe the Court does the bench and bar a disservice in neglecting to address the appropriate standard to apply.
¶140 Second, I do not believe that the class claim heremeither the one certified by the District Court nor the one remade by this Court-satisfies the commonality requirement of Rule 23(a)(2). In my view, there are no questions of law or fact common to the class. Jacobsen’s class claim is that the CCPR is per se invalid under subsections (1) and (6) of §33-18-201, MCA. These two subsections, however, demand consideration of highly individualized, case-specific criteria. The District Court recognized this, but concluded that a common question of law or fact could be formulated for the class by essentially setting aside the case-specific criteria of subsections (1) and (6) and evaluating the CCPR’s validity based on the general principles embodied in these two provisions. As discussed, the District Court reasoned that “§§ 33-18-201(1) and (6), MCA, essentially require Allstate to promptly, accurately, truthfully, fairly, and in good faith adjust bodily injury and property damage claims.” The District Court construed the class claim to be that Allstate’s use of the CCPR violates *458 these general principles, ‘irrespective of individual outcomes.” This Court apparently adopts the same analysis. Opinion, ¶ 40.
¶141 I question this approach of evaluating the validity of the CCPR-er any other settlement practice, for that matter-under § 33-18- 201, MCA, based on certain criteria that are selectively plucked from the statute, while ignoring other criteria in the statute. It strikes me that this approach violates the cardinal rule that, “[i]n the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted.” Section 1-2-101, MCA. The Legislature crafted the various subsections of § 33-18-201, MCA, to address specific settlement practices. Subsection (1) states that an insurer may not “misrepresent pertinent facts or insurance policy provisions relating to coverages at issue.” Subsection (6) states that an insurer may not “neglect to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.” I do not subscribe to the view that the fact-finder in a class trial can determine whether the CCPR is per se invalid under subsections (1) and (6)-as to all class members-by simply disregarding the individualized inquiry plainly required by the statute as to such questions as whether liability had become reasonably clear, whether the allegedly misrepresented facts were pertinent to coverages at issue, and whether Allstate had a reasonable basis in law or in fact for contesting the claim or the amount of the claim (see §33-18-242(5), MCA).
¶142 I do not mean to suggest that no class action is possible under §33-18-201, MCA. I do believe, however, that the supposed common question herewvhether Allstate’s use of the CCPR violates §33-18-201(1) and (6), MCA-eannot be answered for an entire class of claimants. Whether Allstate deliberately crafted the CCPR in such a way as to avoid review on a classwide basis (an allegation that surfaced in the District Court proceedings) is beside the point. Our duty here is to ascertain whether, under the criteria of §33-18-201(1) and (6), MCA, there is a question of law or fact that “is capable of classwide resohitionwphich means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.” Wal-Mart, 131 S. Ct. at 2551. In my view, there is no such common question, and I thus would hold that commonality, under Rule 23(a)(2), is not met.
¶143 Third, I also share Justice Baker’s concerns about whether Jacobsen meets the typicality and adequacy requirements of Rule *459 23(a)(3) and (4). Dissent, ¶ 96 n. 2. The named plaintiffs claim will be typical of the class where there is a nexus between the injury suffered by the plaintiff and the injury suffered by the class. McDonald v. Washington, 261 Mont. 392, 402, 862 P.2d 1150, 1156 (1993). Such nexus normally exists where proving the named plaintiffs claim will necessarily prove all class members’ claims. McDonald, 261 Mont. at 402, 862 P.2d at 1156.
¶144 Here, Jacobsen does not contend that the amount of his settlement was unfair or inequitable or that his claim was not promptly resolved. Section 33-18-201(6), MCA. Moreover, he cannot claim that Allstate, through the CCPR’s “attorney economics script,” misrepresented pertinent facts or insurance policy provisions relating to coverages at issue to Jacobsen’s detriment, §33-18-201(1), MCA, given that he actually consulted and retained counsel who assisted him with settling his claim. Jacobsen’s claim was adjusted to a represented settlement. He therefore is not a member of the class, which is defined as all unrepresented claimants “whose claims were adjusted by Allstate in Montana to an unrepresented settlement since deployment” of the CCPR. Jacobsen has already had his claim re-opened and readjusted for payment of additional settlement amounts for his bodily injury claim. Consequently, he cannot have his claim re-opened. Further, Jacobsen no longer pursues a property damage claim, which is included in the class definition, and he is a third-party claimant seeking emotional distress damages. He thus would not be representative of first-party claimants or those claimants with property damage. Lastly, Jacobsen’s claims will be subject to unique defenses, not the least of which are: different statutes of limitations for first- and third-party claims; his admission that he spoke to an attorney but chose not to hire one; the basis of his emotional distress; and his desire to have an early settlement. I thus would hold that Jacobsen’s claims are not typical and that he is not an adequate representative of the class under Rule 23(a)(3) and (4), respectively.
V. Conclusion
¶145 In conclusion, I believe the Court has wrongly remade this case into an action for damages under the UTPA (§33-18-242, MCA) and, in so doing, has distorted the rules for certifying a class under Rule 23(b)(2) and jeopardized class members’ due process rights. I further believe that the Rule 23(a) requirements of commonality, typicality, and adequacy are not met here. For all of the reasons set forth above, I respectfully dissent.

 Jacobsen proffered several studies of Allstate’s performance. One such study-a 2007 report from the Consumer Federation of America-asserts that Allstate has been able “to outperform the industry by 20 percent” due to the CCPR.

I agree with the Court that the certification of classwide punitive damages was inappropriate. Not only would such an award implicate due process, Opinion, ¶¶ 77-78, but the District Court did not certify compensatory damages as a class remedy and, thus, there can be no award of class wide punitive damages, see Jacobsen v. Allstate Ins. Co., 2009 MT 248, ¶ 67, 351 Mont. 464, 215 P.3d 649.

 “A person may not ... (1) misrepresent pertinent facts or insurance policy provisions relating to coverages at issue;... [or] (6) neglect to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear; ....’’Section 33-18-201, MCA.

 Again, §33-18-201(6), MCA, prohibits an insurer from “neglect[ing] to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.”

 Prior to 1962, a form of class action was permitted in Montana under §93-2821, RCM (1947). This statute, originally enacted by the first territorial Legislature in 1864 as part of the Bannack Statutes, simply provided that “when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all.’Tn 1961, the Legislature repealed §93-2821, RCM, and various other statutes and replaced them with the Montana Rules of Civil Procedure, which took effect on January 1,1962. See Laws of Montana, 1961, ch. 13. Montana’s Rule 23 was identical in all material respects to then-existing Rule 23 of the Federal Rules of Civil Procedure. In 1966, several of the federal rules were amended, including Rule 23. See 39 F.R.D. 69, 94-98 (1966). Correspondingly, this Court issued an order in 1967 adopting amendments to the Montana Rules of Civil Procedure. In re Montana Rules of Civil Procedure, No. 10750-7 (Sep. 29, 1967, filed Oct. 10, 1967). As noted in our order, the amendments to the Montana Rules were “patterned after either the 1963 or the 1966 amendments to the Federal Rules,” the rationale being that it “would be *451 desirable to maintain uniformity with the Federal Rules insofar as they are suitable to Montana practice.” In this regard, we adopted Federal Rule 23 in its entirety. In light of this background, the history of Federal Rule 23 is directly applicable and relevant to Montana Rule 23. See also Sieglock v. Burlington N. Santa Fe Ry. Co., 2003 MT 355, ¶ 10, 319 Mont. 8, 81 P.3d 495 (because Montana Rule 23 is identical to federal Rule 23, ‘federal authority is instructive on the issue of class certification’!.

 Phillips Petroleum held that an absent plaintiff is entitled to procedural due process protection before he may be bound concerning a claim for money damages or similar relief at law. The plaintiff must be given ‘hotiee,” “an opportunity to be heard and participate in the litigation,” and “an opportunity to remove himself from the class by executing and returning an ‘opt out’ or ‘request for exclusion’ form to the court.” 472 U.S. at 811-12, 105 S. Ct. at 2974.

 Judge Posner, writing for the court in Johnson, 702 F.3d at 372, opined that Wal-Mart ‘left intact the authority to provide purely incidental monetary relief in a (b)(2) class action,” but he acknowledged that the Ninth Circuit has expressed doubt about this in Ellis, 657 F.3d at 986.